IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICIA A. MALLEK, et al.       :
                                 :
    v.                           :       CIVIL NO. CCB-06-129
                                 :
PROCTOR & GAMBLE DISTRIBUTING    :
CO., et al.                      :
                                 :

...o0o...

**MEMORANDUM**

Plaintiffs Patricia A. Mallek and Emil Mallek filed this lawsuit alleging products liability, negligence, and breach of warranty against The Proctor & Gamble Company, The Procter & Gamble U.S. Business Services Company, Procter & Gamble Distributing Co., Walgreen Co. (d/b/a "Walgreens"), Walgreens, Kent Farmer, and Steve Bouyoukos. The plaintiffs allege that Mrs. Mallek experienced an adverse skin reaction to a ThermaCare Therapeutic Heat Wrap, which she purchased "over the counter" (i.e. without a prescription) on or about August 10, 2002 from a Walgreens store located at 4020 Eastern Avenue, Baltimore, Maryland. The case was originally filed in the Circuit Court for Baltimore City on August 15, 2005, but after the plaintiffs amended their complaint on December 21, 2005, the defendants filed a timely notice of removal on January 17, 2006. The plaintiffs filed a motion to remand on February 16, 2006, which defendants oppose. The issues have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the following reasons, the plaintiffs' motion will be denied.

The defendants contend that this court possesses subject matter jurisdiction under 28 U.S.C. § 1332(a). The plaintiffs seek $1,000,000 in damages, well in excess of the $75,000

1

amount-in-controversy requirement.  The plaintiffs are both Maryland residents, the Proctor & Gamble defendants are Ohio corporations with principal places of business in Ohio, and the Walgreens defendants are Illinois corporations with their principal places of business in Illinois.[1] Farmer and Bouyoukos, respectively the store manager and pharmacist of the Walgreens store from which Mrs. Mallek purchased the product, are both Maryland residents; if properly named, their presence prevents complete diversity and removal.  *See* 28 U.S.C. § 1441(b). The defendants contend, however, that Farmer and Bouyoukos ("the individual defendants") were fraudulently joined for the sole purpose of defeating federal diversity jurisdiction.

As the Fourth Circuit has explained, a removing defendant seeking to show fraudulent joinder "must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993) (emphasis in original)); *see also Newman v. Motorola*, 125 F.Supp.2d 717, 719-21 (D.Md. 2000). As there is no claim of outright fraud in this case, the defendants bear the "heavy burden" of showing that the plaintiffs cannot establish a claim against the non-diverse defendants "even after resolving all issues of law and fact in the plaintiff[s'] favor." *Hartley*, 187 F.3d at 424 (citing *Marshall*, 6 F.3d at 232-33). "[U]ltimate success is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief" to warrant remanding the case to state court. *Hartley*, 187 F.3d at 426 (internal citations omitted).  This standard is even more

---

[1] The plaintiff's complaint identifies the actual Walgreens store in Baltimore as a defendant, but the defendants' filings imply that only the parent corporation is a proper defendant, and the plaintiffs do not contest this issue.

2

favorable to plaintiffs than the one used to evaluate motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Id.* at 424.  Lastly, courts should "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Id.* at 424 n.4.

After consideration of the parties' arguments, the court concludes that the defendants have met their heavy burden here, inasmuch as the plaintiffs have no possibility of establishing a claim against the individual defendants in this case.  Although the plaintiffs bring claims for strict liability, negligence, and breach of warranty against the corporate defendants, they only allege negligence on the part of the individual defendants.   Their alleged factual basis for this claim, however, is merely that Farmer and Bouyoukos were employees of the Walgreens store on duty at the time Mrs. Mallek made her purchase.  The plaintiffs have not alleged that Mrs. Mallek had any interaction with either of them whatsoever regarding that purchase, nor have they credibly alleged that the individual defendants had any personal responsibility for assessing the safety risks of products sold by Walgreens.[2]  Even recognizing that both individuals had

---

[2] Although a district court, in determining whether fraudulent joinder exists, is "not bound by allegations of pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available," *AIDS Counseling and Testing Ctrs. v. Group W. Television*, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990), the plaintiffs have not made any suggestion in their pleadings that Mrs. Mallek interacted in any way with the individual defendants.  The plaintiffs, furthermore, cannot claim that they will learn any new facts establishing liability through discovery.  Had Mrs. Mallek communicated with either individual defendant, she would have so alleged.   In addition, the court cannot fathom that either individual had the responsibility to monitor the safety risks of all of the over-the-counter products offered in their particular branch of the national Walgreens chain.  The plaintiffs point to a job description of a "Drug Store Manager" on the Walgreens website, which notes that he/she has the responsibility to "select and order new merchandise." (Pls.' Mot., at 12.)  The court cannot accept, however, that this phrase might create a personal duty on behalf of each manager to assess the potential safety hazards and risks of all such merchandise, nor a duty to warn each and every customer as to those risks.

3

positions of leadership in the store, the plaintiffs cannot possibly establish that by dint of those positions alone, either assumed a legal duty to protect Mrs. Mallek from, or warn her about, the allegedly dangerous over-the-counter product.

To the extent some cases cited by the plaintiffs suggest that sellers of food, medicinal, and health-related products have a high duty of care to their customers, that duty does not necessarily extend to the individual employees of those sellers by nature of their position alone. *See Childs Dining Hall Co. v. Swingler*, 197 A. 105, 110-11 (Md. 1938) (citing *Crigger v. Coca-Cola Bottling Co.*, 179 S.W. 155, 157 (Tenn. 1915)).  Similarly, *Rite-Aid Corp. v. Levy-Gray*, 876 A.2d 115 (Md.App. 2005), involving breach of express warranty, addressed the liability of a pharmacy that had taken on itself the issuance of an advisory notice to its prescription drug customers, but did not address the liability of any individual employee alleged to be negligent.[3]

Although a court should be wary of finding fraudulent joinder on the basis of a novel theory of state law, *Hartley*, 187 F.3d at 425, the plaintiffs here have not alleged any facts that would allow them to proceed against the individual defendants under a traditional negligence theory, and the theory they do propose has no support in existing law.  *See Newman*, 125 F.Supp.2d at 721 (the facts alleged by the plaintiff against a telephone company could not establish liability under any existing negligence theory, and the proposed theories of liability were frivolous); *cf. Christensen v. Philip Morris*, 198 F.Supp.2d 713, 716 (D.Md. 2002) (declining to find fraudulent joinder because plaintiffs had alleged a valid theory of liability,

---

[3] Many of the other cases cited by the plaintiffs in favor of their position are out-of-circuit, dated, and/or not particularly relevant to the present circumstances.  *See, e.g., Canter v. Koehring Co.*, 283 S.2d 716 (La. 1973); *Gates Rubber Co. v. Comeaux*, 455 F.Supp. 531 (D.La. 1978); *Couvi's Drink Box, Inc. v. Philip Morris*, USA, 1994 WL 202319 (D.La. 1994) (unreported).

4

whereas the asserted defense involved a novel application of an existing state statute); *Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 703-04 (D.Md. 1997) (same); *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (reversing the district court's finding of fraudulent joinder in part because the plaintiff had alleged facts stating a valid theory of negligence against the defendant).

From a public policy perspective, the defendants rightly point out that allowing a cause of action against these individual defendants based solely on their positions of authority within the store would expand such employees' potential liability far beyond what current principles of negligence recognize. Under the plaintiff's theory, store managers and pharmacists would assume a duty – under which they would be *personally* liable – to each and every customer who buys a potentially hazardous product in their store, whether or not they even know of those customers' existence, much less actively help them with their purchases. *See Newman*, 125 F.Supp.2d at 721 (noting that the plaintiff's theory would drastically expand telephone companies' potential liability). The court is convinced that the Maryland courts would not entertain such a vast expansion of the law of negligence in these circumstances. *See*, *e.g.*, *Doe v. Pharmacia & Upjohn Co., Inc.*, 879 A.2d 1088, 1095 (Md. 2005) (declining to recognize a novel negligence theory that would create an "expansive new duty to an indeterminate class of people."). Thus, there is no "glimmer of hope for the plaintiff[s]" in prevailing against the individual defendants. *Hartley*, 187 F.3d at 425-26.[4]

---

[4] Pursuant to this conclusion, the court will dismiss the individual defendants from the case. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (the doctrine of fraudulent joinder permits a district court to dismiss the nondiverse defendants). The court, to be clear, expresses no opinion as to the merits of plaintiffs' claims against the Walgreens and Proctor & Gamble defendants.

5

The plaintiff's motion will be denied by separate Order.


| April 24, 2006 | /s/ |
|---|---|
| Date | Catherine C. Blake |
|  | United States District Judge |